# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **RENEE THUMA** | : | Case No. 3:19-cv-00034 |
| 1004 W. Lake Ave. | : | |
| New Carlisle, OH 45344 | : | Judge |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **HOME TOWN REALTY OF VANDALIA, LLC** | : | **COMPLAINT WITH JURY DEMAND ENDORSED HEREON** |
| 9201 N Dixie Dr. | : | |
| Dayton, OH 45414 | : | |
| | : | |
| and | : | |
| | : | |
| **RICHARD M. HERBST** | : | |
| 1527 Furman Drive | : | |
| Vandalia, OH 45377 | : | |
| | : | |
| and | : | |
| | : | |
| **SCOTT FULLAM** | : | |
| 362 Shadowood Dr. | : | |
| Vandalia, OH 45377 | : | |
| | | |
| Defendants. | | |

## PARTIES

1. Plaintiff Renee Thuma ("Ms. Thuma" or "Plaintiff") is a citizen and resident of the state of Ohio.

2. Defendant Home Town Realty of Vandalia, LLC ("HTR") is an Ohio limited liability company that owns and operates a real estate office in Vandalia, Ohio where Ms. Thuma worked for nearly fifteen years. HTR is an employer within the meaning of Ohio law.

3. Defendant Richard M. Herbst. ("Herbst") is a citizen and resident of the State of Ohio. Herbst is HTR's Operating Principal. As the Operating Principal, Herbst was primarily responsible for supervising HTR's day to day operations. Herbst was directly responsible for determining HTR's policies relating to employees and their compensation, and he acted in the interest of an employer with respect to Ms. Thuma.

4. Defendant Scott Fullam ("Fullam") is a citizen and resident of the State of Ohio. Defendant Fullam holds the position of "Team Leader" at HTR.

5. HTR, Herbst and Fullam (collectively "Defendants") are employers within the meaning of Chapter 4112 of the Ohio Revised Code.

6. HTR and Herbst are employers within the meaning of Chapter 4111 of the Ohio Revised Code and the Fair Labor Standards Act ("FLSA").

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 because these Counts arise under the FLSA.

8. This Court has supplemental jurisdiction over the state law claims in Counts III – VII pursuant to 28 U.S.C. § 1367 on the grounds that these Counts are so related to the federal claims over which this Court has original jurisdiction that they form the same case or controversy.

9. This Court has personal jurisdiction over HTR because its principal place of business is within this district and division.

10. This Court has personal jurisdiction over Herbst and Fullam because they reside within this district and division.

11. Venue is proper in this division and district pursuant to 29 U.S.C. § 1391(b). Ms. Thuma was employed in this division and district, and the conduct giving rise to her claims occurred within this district and division.

## FACTUAL BACKGROUND

12. Ms. Thuma worked for Defendant for nearly fifteen years as a Market Center Administrator ("MCA") before Defendants fired her on or about November 2, 2018.

13. Ms. Thuma has a high school diploma and no post-secondary degrees or certifications of any kind.

14. Ms. Thuma's primary duties as an MCA centered around bookkeeping. Her responsibilities included calculating and paying commissions based upon a set formula and information provided by the real estate agents. She also handled basic accounts payable and accounts receivable functions, generated monthly and other periodic reports, performed journal entries, processed trust checks and reconciled bank accounts.

15. Beyond these bookkeeping functions, Ms. Thuma's job involved tasks such as routine HR paperwork, training new agents on the Keller Williams' system, answering questions about the system, taking notes and minutes at meetings, purchasing office supplies, keeping calendars and helping with event planning.

16. Ms. Thuma's work did not involve the exercise of discretion and independent judgment with respect to matters of significance.

17. Ms. Thuma did not regularly, or at any time, direct the work of two or more full time employees.

18. Ms. Thuma did not have the authority to promote employees, determine their pay rates or benefits, or give raises. Likewise, she did not have the authority to hire or fire employees.

19. In recent years, HTR had grown into a large agency of some 130 real estate agents. With such a large number of agents, Ms. Thuma frequently had to spend significant portions of her workday addressing the questions and problems that agents presented to her about complying with Keller Williams' system and the proper paperwork necessary to close transactions and get paid their commissions. As a result, Ms. Thuma often stayed late and took work home to do in the evenings and on weekends. Ms. Thuma also worked through nearly all of her lunch breaks.

20. Further, agents would frequently call or text Ms. Thuma with documentation questions and problems that they needed her to address during evenings and on weekends.

21. Over the course of at least the past three years, Ms. Thuma worked an average of between 50-60 hours per week, including working through the vast majority of her lunch breaks, staying at work late and working in the evening and on weekends.

22. Defendants paid Ms. Thuma on a salary basis with small bonuses for the productivity of the office.

23. Ms. Thuma was a loyal and dedicated employee who performed her job well for nearly fifteen years until, on or about November 2, 2019, Defendants fired her for trumped up reasons.

24. Defendants fostered an office environment in which sexual innuendo and lewd comments were tolerated.

25. Nevertheless, Defendants assert that they fired Ms. Thuma for humor in which she engaged during the office Halloween party on October 31, 2018.

26. Specifically, Ms. Thuma dressed up as a cat for the party and joked about the fact that her tail appeared phallic when she sat down and the tail went between her legs.

27. At this same Halloween party, Defendant gave out awards for costumes, including "sexiest costume" which was awarded to a female agent whose "sexy witch" costume exposed a substantial amount of cleavage.

28. Another annual award given by Defendants to employees is the "Supporter Award." Recipients of this award receive a giant fluorescent orange jock strap mounted to a piece of wood.

29. Men who work for HTR regularly engaged in sexually suggestive jokes and innuendo far more egregious than anything in which Ms. Thuma engaged, and they suffered no consequences as a result. For example, male HTR employees made countless vulgar jokes about "balls" and "holes" during the planning meeting for HTR's golf outing. During leadership meetings, men made lewd jokes referencing women's breasts. At another holiday party, Herbst shook his rear end at female employees during a rollicking game of musical chairs. On multiple occasions, Herbst and Fullam made lewd gestures mimicking masturbation. Defendants excuse such conduct by males with tropes like "he's just a good ol' boy . . . what are you going to do?"

30. Along these same lines, Defendants treated Ms. Thuma differently than male employees with respect to the use of profanity in the office. While Defendants admonished Ms. Thuma for using profanity, male employees used profanity without consequence. When Ms. Thuma brought this disparate treatment to Herbst's attention, he disregarded her complaint.

31. Scott Fullam, HTR's "Team Leader" harassed Ms. Thuma on many occasions by yelling at, berating and belittling her, including in front of her co-workers. On one occasion, in

front of a vendor and a co-worker, Fullam yelled at and belittled Ms. Thuma to such an extent that it brought her to tears. The co-worker later expressed sympathy for Ms. Thuma and told her how uncomfortable it made her to witness the demeaning and intimidating way Fullam treated her.

32. Fullam's treatment of Ms. Thuma was regularly intimidating, severe and pervasive.

33. The way Fullam intimidated and harassed Ms. Thuma was far different from the respectful and friendly way that he treated male employees and other male personnel at HTR.

34. Ms. Thuma complained to Herbst about Fullam's intimidating and abusive conduct toward her on numerous occasions, including as recently as October 2018. Herbst ignored her initial complaints and became progressively more irritated with her when her complaints persisted.

35. Mr. Herbst never took action to address Ms. Thuma's complaints. To the contrary, in response to her most recent complaint, he warned her that if Fullam found out that she had complained about him, it would only make her work environment even worse.

36. On November 1, 2018, Marc Herbst, Defendant Richard Herbst's brother, came into Ms. Thuma's office and proceeded to yell at her about processing his commission check. With a loud voice and an intimidating tone he repeatedly told her to do her job and wrongly accused her of intentionally not processing his check. The reality was that Ms. Thuma had not failed to timely process Mr. Herbst's check in any respect, but that did not stop him from baselessly berating her. Ms. Thuma complained to Herbst about the way Marc Herbst had treated her. Defendants took no action relative to Marc Herbst in response to Ms. Thuma's complaint.

37. Two days later, on November 2, 2018, Defendants terminated Ms. Thuma's employment after nearly fifteen years of service.

## COUNT I

### (Failure to Pay Wages and Overtime Wages in Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* against HTR and Herbst)

38. Ms. Thuma realleges the foregoing paragraphs as if fully rewritten herein.

39. HTR and Herbst are employers covered by the overtime requirements set forth in the Fair Labor Standards Act ("FLSA").

40. During her employment, Ms. Thuma's primary duties were not of a character that would qualify her position with HTR and Herbst for an exemption from the overtime provisions of the FLSA.

41. At all relevant times, HTR and Herbst paid Ms. Thuma a pre-determined amount on a weekly or semi-monthly basis. This pre-determined amount was based upon an annualized salary, which was based upon her working 40 hours per week.

42. Throughout her employment, Ms. Thuma regularly worked hours in excess of 40 per week.

43. Although HTR and Herbst were aware of this fact, they never paid her for any hours that she worked in excess of 40.

44. Ms. Thuma is entitled to receive compensation for the time that she worked in excess of 40 hours per week, including time-and-a-half pay for all hours that she worked in excess of 40 in any given week.

45. At all relevant times, HTR and Herbst's failure to pay Ms. Thuma for all of the hours she worked was willful.

46. In addition to unpaid overtime compensation, Ms. Thuma is entitled to liquidated damages as set forth in 29 U.S.C. § 216.

47. Ms. Thuma has been required to file this action as a result of HTR and Herbst's

failure to pay her for all of the hours that she worked in accordance with FLSA and, as such, is entitled to attorneys' fees and costs incurred in accordance with 29 U.S.C. § 216.

## COUNT II

### (Failure to Maintain Accurate Records in Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, against HTR and Herbst)

48. Ms. Thuma realleges the foregoing paragraphs as if fully rewritten herein.

49. Pursuant to 29 U.S.C. § 211(c), and the Fair Labor Standards Act Recordkeeping Regulations, 29 C.F.R. 516, Defendants are required to maintain records reflecting the hours worked each day by all non-exempt employees.

50. HTR and Herbst failed to maintain accurate records of hours worked by Ms. Thuma.

51. By failing to maintain accurate records of hours worked by Ms. Thuma, HTR and Herbst willfully, knowingly and recklessly violated the provisions of the Fair Labor Standards Act requiring maintenance of detailed records.

52. As a result of HTR and Herbst's policy and practice of not maintaining accurate records of hours worked by non-exempt employees, Ms. Thuma has been damaged in that she has not been compensated for all of the hours that she worked, as required by the Fair Labor Standards Act.

## COUNT III

### (Failure to Pay Wages for Overtime Hours in Violation of Chapter 4111 of the Ohio Revised Code, against HTR and Herbst)

53. Ms. Thuma realleges the foregoing paragraphs as if fully rewritten herein.

54. HTR and Herbst are employers covered by the overtime requirements set forth in the Ohio Revised Code § 4111.03.

55. During her employment, Ms. Thuma's primary duties were not of a character that would qualify her position with HTR and Herbst for an exemption from the overtime provisions of Chapter 4111 of the Ohio Revised Code.

56. At all relevant times, HTR and Herbst paid Ms. Thuma a pre-determined amount on a weekly or semi-monthly basis. This pre-determined amount was based upon an annualized salary, which was based upon working 40 hours per week.

57. Throughout her employment, Ms. Thuma regularly worked hours in excess of 40 per week.

58. Although HTR and Herbst were aware of this fact, Defendants never paid her for any hours that she worked in excess of 40.

59. Ms. Thuma is entitled to receive compensation for the time that she worked in excess of 40 hours per week, including time-and-a-half pay for all hours that she worked in excess of 40 in any given week.

60. At all relevant times, HTR and Herbst's failure to pay Ms. Thuma for all of the hours that she worked was willful.

61. Ms. Thuma has been required to file this action as a result of HTR and Herbst's willful failure to pay her for all of the hours that she worked in accordance with Chapter 4111 of the Ohio Revised Code and, as such, is entitled to attorneys' fees and costs incurred in accordance with Ohio Revised Code § 4111.10.

## COUNT IV

**(Failure to Maintain Accurate Records in Violation of Ohio Revised Code § 4111.08, against HTR and Herbst)**

62. Ms. Thuma realleges the foregoing paragraphs as if fully rewritten herein.

63. Pursuant to Ohio Revised Code § 4111.09, HTR and Herbst are required to maintain

9

records reflecting the hours worked each day by all non-exempt employees.

64. HTR and Herbst failed to maintain accurate records of hours worked by Ms. Thuma.

65. By failing to maintain accurate records of hours worked by Ms. Thuma, HTR and Herbst willfully, knowingly and recklessly violated the provisions of Ohio Revised Code § 4111.08 requiring maintenance of detailed records.

66. As a result of Defendant's policy and practice of not maintaining accurate records of hours worked by non-exempt employees, Ms. Thuma has been damaged in that she has not been compensated for all of the hours that she worked, as required by Chapter 4111 of the Ohio Revised Code.

## COUNT V

### (Gender-Based Discrimination in Violation of Chapter 4112 of the Ohio Revised Code against HTR and Herbst)

67. Ms. Thuma alleges all of the foregoing paragraphs as if fully rewritten herein.

68. Ms. Thuma is a female who, at all relevant times, was fully qualified for all positions that she held for Defendants.

69. Defendants discriminated against Ms. Thuma on the basis of her gender when it disciplined and then terminated her for certain alleged conduct, but it did not discipline or terminate men for engaging in conduct of the same character.

70. But for Ms. Thuma's gender, HTR and Herbst would not have terminated her employment.

71. HTR and Herbst's discriminatory conduct was intentional, willful, wanton and malicious in nature.

72. As a direct and proximate result of Defendants' conduct as set forth above, Ms. Thuma has suffered injury and damages for which she is entitled to recovery under Chapter 4112 of the Ohio Revised Code.

## COUNT VI

### (Gender-Based Harassment in Violation of Chapter 4112 of the Ohio Revised Code against all Defendants)

73. Ms. Thuma realleges the foregoing paragraphs as if fully rewritten herein.

74. Defendants subjected Ms. Thuma to severe and pervasive unlawful harassment creating a hostile work environment.

75. Defendants did not subject male employees or other male personnel at HTR to the hostile and intimidating treatment to which it subjected Ms. Thuma.

76. Defendants' treatment of Ms. Thuma was both objectively and subjectively offensive, and it unreasonably interfered with her ability to perform her job.

77. Because of the harassment described above, Ms. Thuma has suffered emotional injury.

78. The above-described actions of Defendants constitute unlawful gender-based harassment in violation of Ohio Revised Code Chapter 4112.

79. The above-described conduct was intentional, malicious, willful and wanton in nature.

80. As a direct and proximate result of Defendants' above-described conduct, Ms. Thuma has suffered injury and damages for which she is entitled to compensation in an amount to be proven at trial.

## COUNT VII

**(Unlawful Retaliation in Violation of Chapter 4112 of the Ohio Revised Code against all Defendants)**

81. Ms. Thuma realleges the foregoing paragraphs as if fully rewritten herein.

82. Ms. Thuma engaged in protected activity by complaining to Defendant Herbst about the severe and pervasive harassment she endured in connection with her employment.

83. Defendant Herbst took no action to address these complaints. Instead, he told her that her work environment would only get worse if she continued to complain.

84. In retaliation for her complaints, Defendants terminated Ms. Thuma's employment in violation of R.C. §4112.02.

85. HTR and Herbst's actions were willful, wanton, malicious, and/or in reckless disregard of Ms. Thuma's rights.

86. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Ms. Thuma has been injured and is entitled to recovery.

**WHEREFORE**, Plaintiff Renee Thuma demands judgment, jointly and severally, against Defendants Home Town Realty of Vandalia, LLC, Richard Herbst and Scott Fullam as follows:

(a) That Defendants be enjoined from further unlawful conduct as described in the Complaint;

(b) That Plaintiff be awarded compensatory damages including emotional distress damages;

(c) That Plaintiff be awarded all lost pay and benefits;

(d) That Plaintiff be awarded punitive damages;

(e) That Plaintiff be awarded all unpaid wages for overtime hours worked;

(f) That Plaintiff be awarded liquidated damages;

(g) That Plaintiff be awarded pre-judgment interest;

(h) That Plaintiff be awarded reasonable attorneys' fees; and

(i) That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

## JURY DEMAND

Plaintiff Renee Thuma hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Theodore C. Copetas
Theodore C. Copetas (0068419)
Eberly McMahon Copetas LLC
2321 Kemper Lane, Suite 100
Cincinnati, OH  45206
Telephone: 513-533-9898
Fax:  513-533-3554
tcopetas@emclawyers.com

Counsel for Plaintiff Renee Thuma